UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| CLYDE BOYETT, ET AL | CIVIL ACTION NO. 3:10-cv-00323 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| REDLAND INSURANCE CO. | MAGISTRATE JUDGE HAYES |

### MEMORANDUM ORDER

Defendant, Redland Insurance Company ("Redland") seeks summary judgment dismissing the instant suit on the grounds that Louisiana's uninsured/underinsured motorist ("UM") statute, Louisiana Revised Statute 22:1295, does not provide coverage for the injuries sustained by Plaintiff Clyde Boyett [Record Document 26]. Plaintiffs, Clyde and Annie Boyett, oppose this Supplemental Motion for Summary Judgment [Record Document 28].

For the reasons outlined below, the Defendant's Supplemental Motion for Summary Judgment [Record Document 26] is **GRANTED**.

### FACTUAL BACKGROUND[1]

The material facts are not in dispute. The issues are purely questions of law. On March 3, 2009, the Plaintiff Clyde Boyett was injured in North Carolina while assisting in the loading of lumber and wooden beams onto a flatbed tractor trailer owned by his employer, Boeuf River Ventures, Inc. ("Boeuf River"), and driven by Plaintiff. The

---

[1] All material facts set forth in the statement required by Local Rule 56.1 to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

1

Defendant Redland provided a policy of liability coverage, policy number RICTN0002889 issued in Louisiana, for the tractor trailer that Mr. Boyett was driving/loading.[2] [See Record Documents 1 and 26-1]. Thus, for purposes of our analysis, the tractor trailer is the insured vehicle. Lee Simmons ("Simmons"), an employee of Carolina Lumber and Brick, Ltd., was loading the insured trailer with a forklift when some portion of the load fell, seriously injuring Mr. Boyett. Plaintiffs allege Simmons' negligent operation of the forklift caused Mr. Boyett's injuries.

Plaintiffs make the following claims: that Redland provided UM coverage on the Boeuf River tractor trailer; that the forklift constituted a "motor vehicle" within the meaning of the UM statute; and that Redland therefore provided coverage for Boyett's injuries. It is undisputed that Boeuf River did not purchase UM coverage under the instant policy; however, there is no written waiver by Boeuf River explicitly rejecting UM coverage as required under Louisiana's UM statute. [See Record Documents 26-1 and 28-1]. Defendant Redland argues that there is no statutory UM coverage in this case because: (a) the accident did not occur in Louisiana; and (b) the forklift involved in this accident does not qualify as an "uninsured motor vehicle" for purposes of Louisiana Revised Statute 22:1295.

## PROCEDURAL HISTORY

Defendant Redland filed its original Motion for Summary Judgment seeking dismissal on the grounds that the instant policy provided neither liability coverage nor

---

[2] As conceded by Plaintiffs and determined by this Court's prior Order on Motion for Summary Judgment [Record Document 21], the Redland policy at issue did not provide liability coverage for the accident in question.

UM coverage for the injuries sustained by Plaintiff, Clyde Boyett. [Record Document 17]. The Court granted the motion insofar as it pertained to coverage under the liability portion of the policy but denied the motion as to whether the statutorily imposed UM coverage applied to this case, reserving to the Defendant the right to re-urge the latter issue. [Record Document 21].

Subsequently, the Court held a status conference and outlined the following specific issues for the parties to address in the instant Supplemental Motion for Summary Judgment [Record Document 26] and the opposition thereto [Record Document 28]: (1) provide more information on the forklift at issue, specifically whether it is titled and whether it is capable of being driven on the highway; (2) provide the controlling definition of a motor vehicle for purposes of the UM statute, La. R.S. 22:1295; (3) discuss whether the forklift at issue is a motor vehicle for purposes of Title 22; (4) discuss whether Title 32[3] has ever been used to define a motor vehicle for purposes of Title 22; (5) discuss the legal interpretation(s) of La. R.S. 22:1295(1)(a)(iii)'s statement that "uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state;" and (6) provide the date that the aforesaid language was added to La. R.S. 22:1295(1)(a)(iii). [See Record Document 23].

As stated in the previously issued Memorandum Order [Record Document 21], it is the Court's position that whether or not there is UM coverage for the plaintiff's

---

[3] The Court mistakenly referred to Title 33 in the status conference minutes; however, as the parties have noted, the intended reference was Title 32.

3

injuries in this case is a two-part inquiry. First, is UM coverage "read into" the commercial liability policy issued in Louisiana as a result of the statutory mandate in La. R.S. 22:1295, where there is no valid UM rejection and the accident occurred out of state? If the answer to the first inquiry is yes, the second inquiry is whether or not that coverage is afforded to Boyett's injuries in the situation where the uninsured/underinsured "motor vehicle" is a forklift.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] In making its determination as to whether summary judgment is appropriate, the Court must draw all justifiable inferences in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Reid v. State Farm Mutual Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute as to any material fact. Celotex Corp. V. Catrett, 477 U.S. 317, 323 (1986); Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309 (5th

---

[4] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

Cir. 1999). A material fact is any fact "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. To oppose, the non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech Univ., 80 F.3d 1042, 1047 (5th Cir. 1996)(citations omitted); see also Celotex Corp., 477 U.S. at 321-24.

## LAW AND ANALYSIS

At the outset, the Court notes that Louisiana law requires that UM coverage be read into any automobile liability policy "unless validly rejected." Gray v. American Nat. Property & Cas. Co., 07-1670, p. 8 (La. 2/26/08); 977 So.2d 839, 845 (internal citations omitted). As mentioned above, there is no valid rejection of UM coverage in this case. Therefore, Louisiana law requires that we read UM coverage into the policy if the statute applies to out-of-state accidents.

The Court, on its own, raised with counsel the issue of whether the statutorily supplied UM coverage would apply to this out-of-state accident. Louisiana Revised Statute 22:1295[5] provides, in pertinent part:

> (1)(a)(I) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness,

---

[5] Louisiana's UM statute was renumbered from La. R.S. 22:680 by Acts 2008, No. 415, §1, eff. Jan. 1, 2009.

> or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section.
> ...
>
> (ii) Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative.
> ...
>
> (iii) This Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state.[6]

Historically, the purpose of the Louisiana UM statute has always been to promote full recovery for damages by innocent automobile accident victims. Champagne v. Ward, 03-3211, p. 25 (La. 1/19/05); 893 So.2d 773, 788. The statute accomplishes this objective by making UM coverage available for their benefit as primary protection when the tortfeasor is without insurance and as additional or excess coverage when he is inadequately insured. See Bosch v. Cummings, 520 So. 2d 721, 723 (La. 1988). Defendant Redland contends that Louisiana does not provide statutory UM coverage in this case, because the accident did not occur in Louisiana. In so arguing, Redland cites La. R.S. 22:1295(1)(a)(iii) (hereinafter "the amendment") which provides that "[t]his Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state." However, Plaintiff argues that the statute mandates UM coverage

---

[6] Subsection 1(a)(iii) was added to the UM statute by 1987 La. Acts No. 444.

because the policy was issued in Louisiana, irrespective of where the accident may have occurred. In this case, the accident occurred in North Carolina.

"There is scant case law specifically concerning the amendment; however, the cases applying the amendment clearly reflect that the language added by Act 444 was intended to extend geographically the scope of UM coverage beyond cases where the policy was issued in Louisiana and the vehicle was garaged in Louisiana." Nelson v. Robinson, 44,059, p. 6 (La. App. 2 Cir. 4/22/09); 10 So. 3d 356, 359. As the Louisiana Supreme Court explained in Champagne, the amendment expands the scope of the UM statute to allow coverage for any accident occurring in the state of Louisiana and involving a Louisiana resident. Id. (citing Champagne, supra, 893 So.2d 773). There, the court held that cases involving a foreign policy may still fall under the ambit of the UM statute; however, a choice-of-law analysis is required to determine which state's law should apply to the interpretation of the UM policy. Champagne, 893 So.2d at 786. In our case, the Redland policy was issued in Louisiana; thus, the question of UM falls within the realm of the introductory language in La. R.S. 22:1295. The relevant question is whether the geographical limitation in the amendment applies with equal force when the policy is issued in Louisiana as it does when a case involves a foreign policy.

It is true that "the statutes providing for UM coverage in the absence of a valid rejection ... must be liberally construed, while the statutory exceptions to UM coverage must be strictly construed." Gray, supra, 977 So. 2d at 845 (internal citations omitted). "Any exclusion from coverage must be clear and unmistakable." Id. As the court explained in Champagne:

> When interpreting a statute, all parts of a statute should be given effect, and an interpretation making any part superfluous or meaningless should be avoided. First Nat. Bank of Boston v. Beckwith Machinery Co., 94-2065 (La. 2/20/95); 650 So.2d 118. The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing laws on the same subject. Bunch v. Town of St. Francisville, 446 So.2d 1357 (La. App. 1 Cir. 1984). ... [W]hen the wording of a statute is clear and free of ambiguity, the letter of the statute shall not be disregarded under the pretext of pursuing its spirit. La. R.S. 1:4.

893 So.2d at 786.

Louisiana's Third Circuit Court of Appeal decided a case involving residents of this state and an accident in this state; however, the UM policy was issued in New Hampshire. Willett v. Nat. Fire and Marine Ins. Co., 594 So.2d 966 (La. App. 3 Cir. 1992). Regarding the effect of the amendment on Louisiana's UM coverage, the Willett court stated:

> "...[T]he statute as amended is no longer limited in its effect to only those policies that are delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state. By the amendment the statute additionally imposes [UM] requirements upon any liability insurance covering any accident which occurs in this state and involves a resident of this state."

Id. at 969. When we consider the objective of the UM statute, in light of its introductory language and the amendment which was intended to expand its scope, it seems reasonable to conclude that the amendment is inapplicable to this case. The amendment will only come into play where there is a foreign policy and each prong of the conjunctive amendment is met. In such cases, a choice-of-law analysis is required in accordance with Champagne, supra. Here, Louisiana law will operate to provide UM coverage, based solely on the fact that the Redland policy was issued in this state.

Having determined that the UM statute reaches the facts of this case, we now

8

turn our attention to whether or not the forklift may be considered an uninsured "motor vehicle." It is true that "UM coverage attaches to the person of the insured, not the vehicle[.]" Howell v. Balboa Ins. Co., 564 So.2d 298, 301 (La. 1990). However, that holding simply ensures that UM coverage is not made dependent upon a relationship with an insured vehicle. Id. (emphasis added). In other words, "[UM] coverage protects an insured without regard to whether the insured is in, or intends to enter, the insured vehicle." Hastings v. International Service Ins. Co., 490 So.2d 656, 659 (La. App. 2 Cir. 1986) (internal citations omitted). It has further been established that Louisiana's UM statute affords coverage to innocent automobile accident victims without regard to the particular "class of vehicle." Mednick v. State Farm Mut. Auto. Ins. Co., 09-183, p. 5-6 (La. App. 5 Cir. 1/26/10); 31 So.3d 1133, 1136. However, again, this simply means that a UM policy may not exclude specific types of motor vehicles, such as government-owned vehicles, from its definition of uninsured vehicles. Id. Acknowledging these underlying principles, it is still necessary to explore the definition of an uninsured "motor vehicle" as its use was intended in Louisiana's UM statute.

    There is no definition of the term "motor vehicle" in the UM statute, as it is used in reference to the uninsured motor vehicle. Instead, the statute only modifies the term "motor vehicle" as it refers to the vehicle on which the liability policy has been issued, with the following language: "any motor vehicle designed for use on public highways and required to be registered in this state." Here, we are asked to determine whether the forklift qualifies as a "motor vehicle," as the term is used

without any modifying language.

The commonly accepted definition of "motor vehicle" is "an automotive vehicle not operated on rails; especially: one with rubber tires for use on highways." Merriam-Webster's Collegiate Dictionary, Eleventh Edition. Likewise, a forklift is "a self-propelled machine for hoisting and transporting heavy objects by means of steel fingers inserted under the load." Id. In applying an exclusionary clause in a UM policy, one Louisiana court has found that "[t]he forklift is clearly a vehicle designed principally for use off of public roads." Williams v. Western World Ins. Co., 96-751, p. 2 (La. App. 3 Cir. 12/11/96); 685 So.2d 529, 531. Another court, faced with a business auto policy which excluded any "mechanical device," found that "a forklift fits within the generally prevailing meaning of the term 'mechanical device.'" Dauthier v. Pointe Coupee Wood Treating Inc., 560 So.2d 556, 558 (La. App. 1 Cir. 1990). Significantly, the Court recognizes that these cases were interpreting policy language, rather than the UM statute. Nonetheless, the Court finds the reasoning to be instructive in determining whether this particular forklift should be included in the term "motor vehicle."

The Court likewise agrees that the definitions included in the Louisiana Highway Regulatory Act, found in Title 32 of Louisiana's Revised Statutes, do not apply to considerations involving UM coverage. See Lee v. Davis, 04-966, pp. 5-6 (La. App. 5 Cir. 2/15/05); 897 So.2d 753, 756. Similarly, Louisiana's Third Circuit Court of Appeal has acknowledged that "[t]here is no denial that the enactment of [the Title 32] definitions was for a purpose unrelated to insurance protection." Thibodeaux v.

St. Paul Mercury Ins. Co., 242 So.2d 112, 113 (La. App. 3 Cir. 1970). Although the definitions provided in Title 32 do not apply directly to our interpretation of terms used in the UM statute, Title 32 does "govern the operation of vehicles and pedestrians upon all highways within this state[.]" La. R.S. 32:21. Thus, Title 32 lends itself to Louisiana's interpretation of the term motor vehicle.

Louisiana requires, inter alia, that motor vehicles be operated under license and registration, include proper safety equipment, bear an inspection tag, and contain rearview mirrors. See La. R.S. 32:51, 53, and 354. It therefore seems unavoidable that we must analyze the nature and use of the forklift in question, as it relates to its design and intended mode of operation. Here, the parties agree that the forklift in the present case is not titled. [See Record Documents 28 and 26-2]. Further, based on the parties' assertions as well as photographs attached to the instant motion, the forklift lacks any and all of the requisite safety equipment mentioned above. [See Record Document 26-3]. The accident in question did not occur on a public highway, nor does the Court find that this forklift was in any way intended or designed principally for use on public highways. Instead, the forklift was being used in the loading of lumber and wooden beams onto a flatbed trailer. Applying the commonly accepted definition of "motor vehicle" to the specific forklift at issue in this case, the Court finds that the statute's intended reach would be strained to include this piece of machinery as an uninsured motor vehicle.

"Uninsured motorist coverage is provided for by statute and embodies a strong public policy. The object of such coverage is to provide full recovery for automobile

accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance." Mednick, 31 So. 3d at 1136. Although we fully respect the spirit of the UM statute, there must be limits to its application. "[W]hen the wording of a statute is clear and free of ambiguity, the letter of the statute shall not be disregarded under the pretext of pursuing its spirit." Champagne, supra, 893 So.2d at 786 (citing La. R.S. 1:4). We can find no precedent for allowing a forklift, clearly not designed for use on public highways and not included in commonly accepted definitions of "motor vehicle," to qualify as a motor vehicle under Louisiana's UM statute.

## CONCLUSION

For the foregoing reasons, the Court finds that Louisiana law does not mandate statutory UM coverage for the forklift involved in this case. Accordingly, Defendant Redland's Supplemental Motion for Summary Judgment [Record Document 26] is hereby **GRANTED.**  Plaintiffs' claims are hereby **DISMISSED WITH PREJUDICE.**

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 11th day of December, 2012.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE